## JOHN MacRITCHIE *et al.* v. JOHN P. JOHNSON.

1. VERDICT— *When Trial Court May Direct.* On a suit on a promissory note, trial being had before a jury, the trial court has the right to compute the amount of recovery and direct a verdict from a jury, when the state of the evidence justifies it.

2. PROMISSORY NOTES —*Action by Bona Fide Holder — Evidence—Competency.* In an action by the *bona fide* holder of promissory notes against the makers, wherein defenses are alleged that would defeat a recovery of the notes if the facts constituting them had come to the knowledge of the holder before he purchased the notes from the payees, and he has introduced uncontradicted evidence tending to establish his good faith, it is not error for the trial court to refuse

offers to prove the facts claimed to constitute the defenses, when such offers are not accompanied with others to show that these facts were known to the holder before the purchase.

*Error from Butler District Court.*

ACTION by *Johnson* against *MacRitchie* and others on two negotiable notes. Judgment for plaintiff, at the October term, 1889. The defendants come to this court. The opinion states the facts.

*E. N. Smith,* and *H. J. Hodgson,* for plaintiffs in error:

The issues before the trial court were, Did John P. Johnson purchase the notes before maturity? and, if so, did the defendants ever execute and deliver the notes to Kniffin & White? There was some evidence before the jury. The court erred in handing one of the jurors a paper to sign, which he signed and returned as the verdict of the jury, when it was not in any sense whatever. Defendants had a right at least to have the amount due ascertained by the jury, which was not done. The right of a trial by jury will not be disputed. A judgment by the court not founded on a verdict is error. 6 Kas. 153. It was a mere farce to hand a juror a paper and tell him to sign it, he not knowing what he was signing and no juror joining him. This judgment was rendered without a verdict, and the defendants objected to the discharge of the jury until they rendered a verdict. In support of our right to trial by jury, see 31 Kas. 665; 30 id. 760. See, also, 13 id. 33.

The court erred in sustaining an objection to the fifth question, and the further offers of the defendants and each of them. There cannot be an objection to the fifth question. How did the court know but that defendant Squier would have said, "Why, Mr. John P. Johnson and Mr. Kniffin came to me and procured my signature by a promise that the horse was of excellent quality, well bred," etc.; or, "that the notes were signed by some of the parties who were to sign; and then Mr. John P. Johnson was present in Beau-

mont and saw Kniffin steal the notes out of a show-case and take them away; that he knew they were not delivered." Such answers would have sustained the issues. In support of our right to inquire into the circumstances of the execution of the notes, see 38 Kas. 533, and 31 id. 480, 481, where evidence of the circumstances, as well as the talk before signing, were admitted.

The signing is not enough; it must be delivered as well, or there is no property right in it, and no legal or valid transfer can be made. One of the defenses in this case is, that the notes were never delivered to Kniffin; hence they had no legal existence — were in no sense contracts — one essential feature being absent: delivery. No title could first pass, and no subsequent purchaser could obtain more than Kniffin. See 16 Wis. 571; 19 id. 297; 29 id. 196; 20 Mich. 429; 21 id. 415; 1 Dan. Neg. Inst., § 776; 1 Par. N. & B., pp. 48, 51, 275, 278, 856; 46 Iowa, 515, 550; 45 Ill. 285; 38 Wis. 43–52.

The issues in the case were fairly joined on the questions as to whether the notes were signed by all the parties who were to sign them, and then whether or not Kniffin did not steal the notes and obtain the possession in that way. The exclusion of the evidence offered was error.

*Clogston, Hamilton, Fuller & Cubbison,* and *B. R. Leydig,* for defendant in error.

Where fraud in the inception of a note is pleaded in an action thereon, and the plea is supported by evidence, the burden of proof is upon the plaintiff to show that he gave value for it, and that he is a *bona fide* purchaser before maturity. *Woodward v. Rogers,* 31 Iowa, 342; *Lane v. Krekle,* 22 id. 399; *Smith v. Sac County,* 11 Wall, 139; *National Bank v. Nelson,* 41 Iowa, 563; *Clapp v. Cedar County,* 3 id. 15.

But the court below on the trial of this case held, that fraud having been pleaded by the defendants, it was necessary for the plaintiff to show, in the first instance and prior to the introduction of any testimony in support of the allegations in the answer, that he was a *bona fide* purchaser of the notes

sued upon for a valuable consideration and before maturity, and by reason of this ruling of the court below the plaintiff opened the case to the jury without objection or exception on the part of the defendants to that order of introducing the evidence. And even if the court's ruling was not correct in that respect and in accordance with the authorities, the plaintiffs in error cannot now complain in this court, because they made no objection in the court below, and, as we understand their position, are not now objecting to that order of introducing testimony. In obedience to that ruling of the court, plaintiff offered the testimony in his own behalf, thereby establishing that he was a *bona fide* purchaser for a valuable consideration of the notes before their maturity.

Under the law as laid down in this court, it would not have been sufficient for the defendants in their answers to have stated simply that the notes were fraudulently obtained from them, or were never delivered to the payees, which would have been a good defense as to Kniffin & White if they had brought this action, but would not be a good defense against the plaintiff, who was a *bona fide* purchaser of the notes; and, if the defendants had not gone further in their answers, and made the additional allegations that the plaintiff was not a *bona fide* holder of the notes, and was in collusion with Kniffin & White in procuring the same from the defendants, their answers would have been subject to demurrer and the court would have sustained a demurrer thereto. But they saw fit to make these additional allegations, charging want of good faith on the part of the plaintiff, collusion with Kniffin & White; so that if they had proved the allegations of their answers they would undoubtedly have presented a complete defense to the jury, who would have been compelled under the law to return a verdict in favor of the defendants. Having made these allegations, it was incumbent upon them to prove their defense as alleged.

As to the manner the witness Squier might have answered that question, counsel for plaintiffs in error have evidently forgotten his prior testimony. While his testimony was brief,

yet he was permitted by the court, without any objection from the plaintiff, to answer several questions, which he did, as follows:

"Q. State your name please?   A. Clinton Squier.

"Q. You may state if you are one of the defendants in this case?   A. Yes, sir.

"Q. Are you acquainted with the plaintiff in this case?   A. I am not.   I never saw him until here to-day."

Now if this witness, who was one of the defendants in the case, had never seen the plaintiff, Johnson, until the day this case was tried in the court below, it would have been utterly impossible for him to have truthfully answered question 5 in the manner imagined and suggested by counsel for plaintiffs in error.

We have made an examination of the points decided and the law as laid down in each of the authorities cited in brief of plaintiffs in error, and, while we shall not claim in this court that the decisions are not good law in their respective states as applicable to the cases in which they were decided, yet we shall claim and urge to this court that they have no application whatever, in our judgment, to the case at bar. And for that reason we claim that the Wisconsin cases on this subject are not authority in this state, as this is not a new question in Kansas. See *McCormick v. Holmes*, 41 Kas. 265; *Draper v. Cowles*, 27 id. 484.   See, also, *Walker v. Evert*, 29 Wis. 199; *McDonald v. Muscatine Bank*, 27 Iowa, 319; *Anderson v. Starkweather*, 28 id. 409; *Douglas v. Matting*, 29 id. 498; *Murray v. Graham*, 29 id. 520; *Loomis v. Metcalf*, 30 id. 382; *Veach v. Thompson*, 15 id. 380; *Robinson v. Lair*, 31 id. 9; *Sully v. Goldsmith*, 32 id. 397.

Why should not the court below, under all the evidence that had been offered, and the failure by defendants to show any defense whatever to the notes as against Johnson, the *bona fide* holder thereof for value before maturity, have done just as the court did in this particular case?   What substantial rights of the plaintiffs in error were affected by the court

below directing the jury to bring in a verdict for the plaintiff? *McCormick v. Holmes*, 41 Kas. 265, 268.

Opinion by SIMPSON, C.: This action was brought in the district court of Butler county by the defendant in error against the plaintiffs in error upon two negotiable promissory notes, one for $900 and the other for $800, both bearing date December 9, 1886, a copy of said $900 note, with the indorsements thereon, being as follows:

"$900.        BEAUMONT, KAS., December 9, 1886.

"For value received, we promise to pay, on the first day of January, 1888, to the order of Kniffin & White, $900, at the National Bank of El Dorado, Kas., with interest at 8 per cent. per annum from date.

[Signed]        N. HERRING.        E. P. LEAMING.
                F. M. LEAMING.        C. KOFOID.
                R. E. & I. F. VAN HUSS.
                CLINTON SQUIER.        JOHN MACRITCHIE."

Indorsements thereon:

"December 14, 1886.    Received on the within note, from N. Herring, one hundred dollars ($100).

"For value received, pay to the order of John P. Johnson.
May 5, 1887.        [Signed]        KNIFFIN & WHITE."

The $800 note sued upon is in the same form, made by the same parties, and having the same indorsements thereon, except that it became due on the 1st day of January, 1889. The suit was brought in said district court on the 11th day of May, 1889. Johnson, in his petition in the court below, alleged that, for a valuable consideration, before the maturity of the notes sued upon and each of them, Kniffin & White, the payees in said notes, indorsed and transferred said notes to the said plaintiff, Johnson, who was, at the time of filing said petition in the court below, the owner and holder of said promissory notes; and, as above stated, each of said notes was indorsed in the following words: "For value received, pay to the order of Jno. P. Johnson.    May 5, 1887.    [Signed] KNIFFIN & WHITE."    Neither of the answers of plaintiffs in error, defendants below, contained a denial under oath of the execution of either of said promissory notes or of the in-

dorsements thereon; and the execution of the notes by the defendants and the indorsement thereof to the plaintiff as alleged in his petition must be taken as true. The defendants in the court below filed separate answers to plaintiff's petition, setting up various defenses to the notes. The answer of Squier admitted the execution of the notes by him, but stated that he signed them under an agreement that several other parties besides the plaintiffs in error had agreed to and would sign the notes jointly with him, and, when so signed, they were to be placed in the hands of Herring, one of the plaintiffs in error, to be by him held until the parties who signed the notes should get together and express themselves as satisfied with the consideration for which the notes were given; that Kniffin, one of the payees, told him that said parties would sign said notes, and, believing his statement, he was thereupon induced to sign the same, which he would not have done if he had known or supposed that no one else, other than those above referred to, were to sign said notes; that said Kniffin & White at that time wanted to sell a stallion to him and other parties for $1,700, and made certain representations as to the quality and value of said stallion, and that he was not of the value or quality as represented; that in violation of said agreement, and without his knowledge and consent, Kniffin & White obtained possession of the notes, after they had been signed by plaintiffs in error, in some way to him unknown, and that he never received any consideration for said notes, and that plaintiff never received any legal right or ownership to said notes by the transfer of the same by Kniffin & White to him, for the reason that Kniffin & White never had any right to sell said notes, the same never having been delivered to them; that said notes were obtained through the false and fraudulent representations of Kniffin. He further answered, denying that plaintiff bought said notes before due, and stating that, if he did buy the notes before due, he was a party to the aforesaid fraudulent acts of Kniffin, and was in collusion with Kniffin & White to cheat, wrong and defraud the makers of said notes, and had them assigned to himself

for the purpose of aiding Kniffin & White to cheat the defendants and to collect said notes; that he had given notice in two newspapers, warning all persons not to purchase said notes.

The answers of the other defendants were in substance the same as that of Squier, above set forth, except that some of them set forth other defenses to said notes, as follows: MacRitchie claimed that he had signed the notes while he was intoxicated, and that his intoxication was procured by Kniffin & White, and he had no knowledge as to his acts in signing said notes, and was not responsible therefor; that Johnson never made any demand on him for the amount due upon said notes until more than one year after the maturity of one of the notes. Herring, in his answer, alleged that Johnson and Kniffin & White were in partnership at the time the notes were executed and assigned, and were sharing the profits arising from the business in which they were engaged, to wit, of selling grade horses, representing the same to be thoroughbred imported horses, and that Kniffin & White owed him $200 for board and lodging, livery, feed bills, and labor. To each and all of said answers the plaintiff, Johnson, filed his reply, denying each and all of the allegations of said answers, and his reply to the answer of Herring alleging partnership of Johnson with Kniffin & White was sworn to.

The defendants, having alleged in their answers that the notes sued upon were procured by Kniffin & White from them by fraud and without consideration, on the trial the plaintiff, Johnson, testified before the court and jury in regard to the circumstances under which he became the owner and holder of the notes, and that he was a *bona fide* purchaser of the same for a valuable consideration and before maturity. He testified that, in April, 1887, he was introduced to Kniffin & White by one Halloway, in his store in the city of El Dorado, Kas., and he learned that they had sold horses through the country, and had some notes for sale. He inquired of several parties as to the responsibility of the makers of the notes, and, among others, of the officers of the National Bank of El Dorado, and ascertained that they were good, bankable

notes, and made an offer for them, but went away from El Dorado to his home in Doniphan county without buying the notes, thinking when he went away that the notes were about to be sold to other parties in El Dorado. He testified further, that some time thereafter Kniffin came to his office in Doniphan county with the notes, and notified him that he would accept his proposition made in El Dorado. His offer was a discount of about 4 per cent., so that the notes, which drew 8 per cent. interest, would make his money net him 12 per cent., and that he paid for the notes their full face value in money less only such small discount.

The testimony of Mr. Johnson, the plaintiff, was fully corroborated by the testimony of the witnesses Thompson, Ewing, Halloway, and Foutch, all of whose testimony showed that Johnson was a *bona fide* purchaser of the notes for a valuable consideration and before their maturity, and without any fraud or collusion of any kind with either Kniffin & White or any one else, and that he purchased the same after making full inquiry in regard to the financial responsibility of the makers, and without any notice that the notes had been procured from the makers by fraud or undue means or without consideration.

The plaintiff below then rested, and the defendants below asked Clinton Squier, whom they had placed on the witness stand, this question: "If you signed these notes, you may state to the court under what circumstances you signed them." To this question an objection was made, on the ground that, under the issues made by the pleadings and the evidence introduced by Johnson, the plaintiff below, it was incompetent and immaterial, and this objection was sustained by the court. Thereupon counsel for the defendants offered to prove by all of the defendants in the case that the notes in controversy were never executed by the signing of the names of all the parties that were to sign them when the contract was made with Kniffin & White. To this the plaintiff again objected, as incompetent, irrelevant, and immaterial, and his objection was sustained by the court.

Defendants then offered to prove by all of the defendants that they never delivered the notes to Mr. Kniffin or to Kniffin & White or to any other person, and never issued the notes to any person, and to this offer the plaintiff again objected, upon the same grounds as before, which objection was sustained. The defendants then offered to prove specially by 'Herring that Kniffin, without his knowledge and consent, took the notes from his possession and hurriedly left the city of Beaumont before he knew he had possession of the notes, taking a freight train; to which the plaintiff objected for the same reasons, which objection was sustained. Defendants' attorney then offered to prove by all of the defendants except Herring that the horse for which the notes were supposed to be executed was never delivered to either of them, and that no other consideration was given for the notes; to which plaintiff again objected for the same reasons, and the objection was sustained. Then the defendants offered to prove by the defendant MacRitchie that, if his name is to the notes, Kniffin first procured his intoxication to such an extent that he was rendered wholly incompetent to contract, and had then no knowledge of having signed the notes, and did not know he had signed them if he did, until more than two years after the execution and delivery of the notes; to this the plaintiff objected for the same reasons, which objection was sustained by the court. Thereupon the defendants' attorney offered to prove by the defendant Leaming that MacRitchie was in a state of intoxication that rendered him entirely incompetent to contract or do any business at the time that they claim the notes were signed; to which offer the plaintiff objected, as being incompetent, irrelevant, and immaterial, and the same was sustained by the court. And the defendants not having any further testimony, and not offering to prove any other issue in the case, the court directed the jury to bring in a verdict for the plaintiff, Johnson, which was accordingly done.

All these objections were properly sustained, for the reason that Johnson, having taken the burden of proving that he was an innocent purchaser of the paper before maturity, and

there being no conflict in the evidence that he was, these offers were not competent without being accompanied by an offer to prove that the facts were known to Johnson before he purchased the paper. No offer of this kind was made by the defendants at any time during the trial. Johnson was presumably a *bona fide* holder, as appeared from the written indorsements. He fortified his position as such by some very satisfactory evidence, and then rested. It was absolutely necessary that the defendants should not only offer to prove a good defense, but that Johnson knew the facts constituting their defense before he purchased the notes. They rested their case without an offer or attempt to do so, and herein they failed. The court had a right to order a verdict, and the trial court or this court can make a proper computation.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.